UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| K'LYLE JONES<br><br>Plaintiff,<br><br>v.<br><br>ALLIED UNIVERSAL SERVICES OF AMERICA, LP and G4S SECURE SOLUTIONS INC.<br><br>Defendants. | Index No.<br><br>**COMPLAINT**<br>**ECF CASE**<br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff K'Lyle Jones alleges as follows:

**JURISDICTION AND VENUE**

2. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Americans with Disabilities Act ("ADA") This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the New York State and New York City Law claims because they are so related to claims under the ADA that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action took place in this district.

**THE PARTIES**

4. Defendant G4S Secure Solutions Inc. (hereinafter "G4S") is a security company with an office located at 60 East 42nd street, New York, NY.

5. Defendant Allied Universal Services of America, LP (hereinafter "Allied") is a security company with several offices in New York City.

6. Defendant Allied acquired Defendant G4S on April 6, 2021.

7. At all relevant times, Allied employed thousands of employees.

8. Pursuant to the New York City Human Rights Law § 8-502(C), within ten days after commencement of this action, Plaintiff will serve a copy of this Complaint upon the authorized representative of the City Commission on Human Rights and the Corporation Counsel for the City of New York.

9. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on December 14, 2021. The EEOC issued a Right to Sue Letter on or about May 26, 2022.

## FACTUAL ALLEGATIONS

10. In February 2019, Plaintiff was hired by Defendant G4S as a District Manager.

11. Throughout the global pandemic, Plaintiff was considered an essential worker and required to work in-person.

12. Throughout the global pandemic Plaintiff was required to work in the office as well as travel to client locations.

13. On January 24, 2021, Plaintiff tested positive for Covid-19.

14. On or around January 24, 2021, Plaintiff was diagnosed with bronchial pneumonia and Covid pneumonia.

15. Plaintiff was hospitalized from February 4 to February 12, 2021.

16. Plaintiff developed blood clots in his left lung, left arm and left leg.

17. Plaintiff developed heart issues, dizziness, lightheadedness, memory loss, and respiratory issues.

18. Plaintiff was diagnosed with pulmonary embolism.

19. On February 26, 2021, Plaintiff was placed on short term disability leave.

20. On April 6, 2021, while Plaintiff was on disability leave, Defendant Allied announced a merger with Defendant G4S.

21. On June 24, 2021, Joseph Falco, Senior Vice President told Plaintiff that his position will not be retained and that he will email Plaintiff severance information.

22. The same day, Mr. Falco emailed Plaintiff a letter dated June 23, 2021 stating, "[w]e have determined that you will fill a valuable role in assisting with the integration process given your knowledge and experience regarding the Company's business. However, beyond the integration process, we have not identified any ongoing, full-time position for you with the Company. We will continue to evaluate whether there may be a future position for you and we will advise you if such a position becomes available for your consideration. Currently, we are offering you the opportunity to remain with us for a transitional period, which we expect will end on or about October 22, 2021. We expect that you will remain in your current position for the duration of the transitional period, though we may ask you to fill a different role. Your end date may be modified (moved to an earlier or later date) based on the needs of the Company."

23. Angel Martoral was a district manager that Allied decided to keep beyond the integration process.

24. Angel Martoral was not on disability leave at the time the decision was made.

25. Angel Martoral had performance issues.

26. Steve Sanders was promoted to District Manager while Plaintiff was out on disability leave.

27. Steve Sanders was a District Manager that Allied decided to keep beyond the integration process.

28. Steve Sanders was not on disability leave at the time the decision was made.

29. In the June 23, 2021 letter, Allied offered an incentive pay of 4 weeks to assist in the integration process.

30. On September 1, 2021, Theresa Osborne, Director of Human Resources, sent a text message to Plaintiff stating, "Hey. Hope you are well. Just a heads up. We are going through all employees on LOA. I will be sending letters out this week. Folks that have exhausted their leave and unable to return will be terminated. Didn't want you caught off guard when you receive the letter."

31. Plaintiff responded "Good morning, I'm not sure how that works if you're on medical leave, what's the effective date, what does that mean for the package? I'm sure I will have a lot of questions and will wait until I receive the letter. [t]hank you."

32. Ms. Osborne responded, "Technically the company is only required to hold your position while you are on STD (26 weeks) and/or FMLA (12 weeks).

33. G4S sent Plaintiff a letter dated September 13, 2021 stating, "We are contacting you concerning your continued employment with G4S. You have not reported earnings since 2/2021. Please reach out to us by Monday, 9/20/21 to receive an

assignment. G4S currently has numerous full time and part time positions open. We'd be happy to meet with you to discuss these opportunities. Unfortunately, if we do not hear from you, we will assume you are no longer interested in employment with G4S and we will inactivate you in our systems. Once this occurs, you will need to reapply for an open position and go through the hiring process again should you wish to be re-hired. While we look forward to speaking with you soon; should you choose to move on from G4S, we wish you the best of luck in the future." This letter came from Karina Sanchez, Senior HR Generalist and Carolyn Curiel, Senior HR Generalist.

34. On September 13, 2021, Plaintiff received an undated letter from Defendant Allied stating, "you have not been selected for a position with the Company on a go-forward basis. This decision was not impacted by your leave status. Subject to your leave not constituting an undue hardship, you will remain on LOA until you are able to return to work, at which time the Company will explore with you assignment to a vacant position for which you are qualified. You are *not* required to begin discussions concerning such an assignment during your leave of absence. If you would prefer to do so, however, please contact auoffer@aus.com to initiate that process."

35. On September 17, 2021, Plaintiff emailed Karina Sanchez, Carolyn Curiel, Theresa Osborne, and Joseph Falco, "I am still interested in employment with G4S. As you know, I have been out due to a disability. I have a doctor's appointment on 9/30 and will update you on whether I am cleared to return to

5

work and the date thereafter. Please feel free to contact me if you have any questions."

36. On October 1, 2021, Plaintiff emailed Karina Sanchez, Theresa Osborne, and Carolyn Curiel to let them know that he had a doctor's appointment on September 30 wherein he was administered a test for nerve damage and has a follow up appointment scheduled for October 7 to determine whether he is cleared to return to work.

37. On October 8, 2021, Plaintiff emailed Karina Sanchez, Theresa Osborne, and Carolyn Curiel stating, "I am happy to report that my doctor cleared me to return to work with a six week phase in. Attached please find the note. Please let me know when we can speak about my return. Thank you."

38. Plaintiff attached a note from his doctor stating that Plaintiff is neurologically clear to return to work as a district manager. However, I suggest we start with a limited hours and capacity (up to 30 hours per week) with limited capacity (2 days in office per week) until f/u appt in 6 weeks for re-evaluation."

39. Theresa Osbourne responded, "As you may know the G4S/AUS transition is final as of today. All employees and systems were transferred as of midnight last night. Can you let me know if you received a go forward offer letter? If not, can you let me know what the last day of your short term letter is? Trying to work through this process and this information will be helpful."

40. Plaintiff responded that he did not receive a go forward letter and that the last day on his short term letter is 10/22/21.

41. On October 15, 2021, Plaintiff emailed Karina Sanchez, Theresa Osborne, and Carolyn Curiel and Joseph Falco, "I am writing to follow up regarding this email thread, I am eager to return to work – please let me know my next steps. Thank you and have a great weekend."

42. Theresa Osborne responded, "I'm adding Sid. I am not sure what next steps are since your short term letter indicated 10/22 as your last day."

43. Sid Celaj added, "I'm not sure to be honest, I mentioned it to the VP, and he will follow up with Pete Maris."

44. On October 21, 2021, the ReedGroup called Plaintiff on behalf of Defendant Allied and asked if he was planning to return to work. Plaintiff responded that he already sent his return to work documents three weeks prior to Theresa Osborne and the rest of the operational team and was waiting to hear back. The individual said that he will contact those individuals.

45. On October 25, 2021, Plaintiff received a letter from Defendant Allied stating that, "Since you have been on a leave that has extended beyond the time we are required to continue benefits all benefits will be terminated as of October 31, 2021 and you are not eligible to enroll for benefits beginning November 1, 2021. . . . When you return to work, please contact the benefits department immediately to review your eligibility for benefits." Plaintiff also received a return to work notice with a return to work release form.

46. Defendant Allied emailed Plaintiff on October 27, 2021 stating "This is to inform you that the date of your expected return to work has been reached and ReedGroup has not received the necessary Return to Work Release Form

completed by your health care provider. Therefore, your leave will be closed due to failure to provide necessary documentation. If you plan to return to work, please contact ReedGroup within 2 days to submit the required release form and complete the return to work process. Allied Universal will begin the internal process in regards to failure to return to work policy."

47. Within four hours of receiving the email, Plaintiff responded, "Below are the forwarded emails and doctors note that were sent the first week of October 2021 to HR and the Operations Team about my status." Plaintiff included his email chain with Theresa Osborne, Karina Sanchez, Carolyn Curiel and Joseph Falco and attached the doctor's note that cleared him to return to work on October 8, 2021.

48. On October 28, 2021, Defendant Allied emailed Plaintiff, "The document has been received and attached to the claim for review."

49. On October 29, 2021, Plaintiff's access to his work email was disabled.

50. On November 2, 2021, Plaintiff emailed ReedGroup, Karina Sanchez, Carolyn Curiel, Joseph Falco, Sid Celaj, and the benefits department asking if someone could explain to him what was going on and whether he has been terminated. Plaintiff noted that simultaneously his email access was disabled while he was sent a return to work release form - three weeks after he submitted a doctor's note clearing him to return to work with a 6 week phase-in. Plaintiff also noted that he did not receive a response to his October 8 email and doctor's note.

51. On November 3, 2021, Karina Sanchez responded, "Glad you are doing better! I have asked corporate for an update on your severance pay. Will provide an update once I hear back."

52. On November 3, 2021, Karina Sanchez emailed Plaintiff, "Corporate was waiting for Reed Group to update your status in the system. I just spoke with Reed Group and they have updated your RTW date. As soon as the information feeds over to AUS, your severance pay will be processed. In the meantime, please sign & email the attached completed forms to auoffer.aus.com." A Confidential Separation Agreement and General Release was attached wherein in states that "Employee's employment with the Company has terminated or will terminate, effective October 22, 2021."

## FIRST CAUSE OF ACTION
## (AMERICANS WITH DISABILITIES ACT)

53. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

54. Plaintiff was disabled within the meaning of the ADA.

55. Defendants were employers within the meaning of the ADA

56. Out of four District Managers, Plaintiff was the only one not retained in the transition.

57. Defendants did not give Plaintiff the opportunity to explore other positions.

58. Defendant terminated Plaintiff's employment due to his disability.

59. Defendant acted with malice or reckless indifference to Plaintiff's rights under the law.

60. Plaintiff seeks damages in the amount of his back pay, loss of benefits, loss of bonus, front pay, compensatory damages, emotional distress, punitive damages, attorney's fees and costs, interest, expert's fees, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
## (AMERICANS WITH DISABILITIES ACT)

61. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

62. Defendant failed to engage in an interactive process with Plaintiff.

63. Defendant failed to provide Plaintiff with a reasonable accommodation.

64. Defendant acted with malice or reckless indifference to Plaintiff's rights under the law.

65. Plaintiff seeks damages in the amount of his back pay, loss of benefits, loss of bonus, front pay, compensatory damages, emotional distress, punitive damages, attorney's fees and costs, interest, expert's fees, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
## (VIOLATION OF NEW YORK EXECUTIVE LAW § 296)

66. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

67. Plaintiff was disabled within the meaning of the New York Executive Law.

68. Out of four District Managers, Plaintiff was the only one not retained in the transition.

69. Defendants did not give Plaintiff the opportunity to explore other positions.

70. Defendants terminated Plaintiff's employment due to his disability.

71. Defendant discriminated against Plaintiff on the basis of his disability.

72. Plaintiff seeks damages in the amount of his back pay, loss of benefits, loss of bonus, front pay, medical costs, compensatory damages, emotional distress, costs, interest, expert's fees, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF NEW YORK EXECUTIVE LAW § 296)

73. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

74. Plaintiff was disabled within the meaning of the New York Executive Law.

75. Defendants failed to engage in an interactive process with Plaintiff.

76. Defendants did not give Plaintiff the opportunity to explore other positions.

77. Defendants failed to provide Plaintiff with a reasonable accommodation.

78. Plaintiff seeks damages in the amount of his back pay, loss of benefits, loss of bonus, front pay, medical costs, compensatory damages, emotional distress, costs, interest, expert's fees, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF NEW YORK CITY ADMINISTRIVE CODE § 8-107)

79. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

80. Plaintiff was disabled within the meaning of the New York City Human Rights Law.

81. Defendants failed to engage in a cooperative dialogue with Plaintiff.

82. Defendant acted with malice or reckless indifference to Plaintiff's rights under the law.

83. Plaintiff seeks damages in the amount of his back pay, loss of benefits, loss of bonus, front pay, medical costs, compensatory damages, emotional distress, punitive damages, attorney's fees and costs, interest, expert's fees, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CAUSE OF ACTION
### (VIOLATION OF NEW YORK CITY ADMINISTRIVE CODE § 8-107)

84. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

85. Plaintiff was disabled within the meaning of the New York City Human Rights Law.

86. Defendant failed to provide Plaintiff with a reasonable accommodation.

87. Defendants did not give Plaintiff the opportunity to explore other positions.

88. Defendant acted with malice or reckless indifference to Plaintiff's rights under the law.

89. Plaintiff seeks damages in the amount of his back pay, loss of benefits, loss of bonus, front pay, medical costs, compensatory damages, emotional distress, punitive damages, attorney's fees and costs, interest, expert's fees, and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF NEW YORK CITY ADMINISTRIVE CODE § 8-107)

90. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

91. Out of four District Managers, Plaintiff was the only one not retained in the transition.

92. Defendant discriminated against Plaintiff on the basis of his disability.

93. Defendants terminated Plaintiff's employment due to his disability.

94. Defendants did not give Plaintiff the opportunity to explore other positions.

95. Defendant acted with malice or reckless indifference to Plaintiff's rights under the law.

96. Plaintiff seeks damages in the amount of his back pay, loss of benefits, loss of bonus, front pay, medical costs, compensatory damages, emotional distress, punitive damages, attorney's fees and costs, interest, expert's fees, and such other legal and equitable relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants and grant the following relief:

1. Declaring that Defendants violated the Americans with Disabilities Act;

2. Declaring that Defendants violated the New York State Human Rights Law;

3. Declaring that Defendants violated the New York City Human Rights Law;

4. An award of damages in an amount to be determined at trial, for any and all economic and/or compensatory damages, punitive damages, monetary and/or non-monetary losses suffered by Plaintiffs plus prejudgment interest, costs, expert's fees, and attorney's fees; and

5. All such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

Dated: June 1, 2022                             The Goldring Firm

*Orit Goldring*
Orit Goldring (OG-1023)

40 Fifth Avenue
New York, NY  10011
Tel:  212.844.9308

Attorney for Plaintiff
K'Lyle Jones